38421. PAGE v. THE STATE.

SMITH, Justice.

William Anthony Page was tried and convicted of murder and sentenced to life imprisonment. In this appeal he raises six

enumerations of error. We affirm.

On the night of August 10, 1981, appellant and a companion, Gregory A. Goins, were hitchhiking along Interstate 85 in southern North Carolina. The two were picked up by Mark Robert DesNoyers as DesNoyers drove from his family's home in North Carolina to his Fort Lauderdale residence. The three young men proceeded through South Carolina without incident, stopping only to buy beer, gas, and some fireworks. According to Goins, the travelers "smoked a couple of joints" and took some red and black pills furnished by DesNoyers.

After crossing the Georgia state line, the party left the interstate in search of more drugs. This detour proved to be fruitless, however, and an argument ensued between DesNoyers, the driver of the car, and appellant, who was seated on the passenger's side. Goins, who had been sleeping in the back seat, awoke in time to observe DesNoyers and appellant engaged in a heated exchange concerning the group's unsuccessful side trip. The two traded blows, then DesNoyers, a hairdresser, reached for a pair of scissors he kept hidden in the front seat. Appellant drew his pocketknife and stabbed DesNoyers in the left chest, killing him.

Appellant took the wheel of DesNoyers' Pinto, drove for several miles, then dumped the body. In his statement to police, appellant said that he threw the victim into a river; Goins testified at trial that the body was dumped by the roadside. Page and Goins, still in possession of DesNoyers' car, headed north and drove to West Virginia.

DesNoyers' badly decomposed body was discovered floating in the Chattahoochee River some six weeks later. Two fishermen spotted the victim's body lodged among some dead trees in the river. The body was still clothed in the blue jeans and green shirt worn by DesNoyers on the date of his disappearance. An autopsy revealed that the cause of death was a stab wound to the chest.

1. Based on this record, a jury was clearly authorized to find appellant guilty beyond a reasonable doubt of murder. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant's first, fourth, fifth, and sixth enumerations cite as error the admission into evidence of an inculpatory statement made to Georgia police officers at the time of appellant's arrest in Charleston, West Virginia. In the confession, which was tape-recorded and reduced to writing for trial, appellant stated that "I beat him in the face . . . I stabbed and throwed him in the back seat of the car and took him over to [the] Chattahoochee River and put him in the river."

(a) In his sixth enumeration of error, appellant contends that his statements to police were improperly admitted because they were

involuntary. We cannot agree.

Two separate Jackson-Denno hearings were held at trial to determine the voluntariness of appellant's statement. The trial court's finding that appellant's statement was made following proper Miranda warnings and was voluntary is clearly authorized by the evidence. See *Pittman v. State,* 245 Ga. 453 (265 SE2d 592) (1980); *Crawford v. State,* 245 Ga. 89, 90 (263 SE2d 131) (1980).

(b) Appellant further contends that the transcript of his tape-recorded statement was improperly admitted because it was not supported by a proper foundation. Appellant's contentions are without merit.

Two separate transcripts were made of appellant's statement. One version was the product of shorthand notes by a stenographer employed by the Charleston police department who was present during the confession; the other was a typed transcription of the tape recording made by Georgia police officers. Only the latter was read to the jury and admitted into evidence at trial. Appellant's sole objection to the use of this transcript of his statement is that material differences in the two versions rendered the tape transcript inadmissible.

In *Brooks v. State,* 141 Ga. App. 725 (234 SE2d 541) (1975), the court set out seven prerequisites for admission of a taped statement. The state must establish: 1) that the mechanical device was capable of taking testimony; 2) that the operator was competent; 3) the authenticity and correctness of the recording; 4) that no changes, additions, or deletions were made; 5) the manner of preservation; 6) the identity of the speakers; and 7) that the testimony was not elicited through duress. See *Solomon, Inc. v. Edgar,* 92 Ga. App. 207, 211 (88 SE2d 167) (1955). The state offered ample proof on each of these elements at trial. The officer who operated the tape machine testified that he had operated the machine many times in the past, that the machine ran well, and that the transcript was an accurate and complete representation of appellant's statement. Counsel for appellant was allowed to review the tape with the district attorney and to compare the two transcripts with the tape itself, and he raised no objections to the accuracy of the tape transcript other than the alleged discrepancies in the two versions. Under these circumstances, we hold that the state's foundation for admission of the tape transcript was adequate. See *Williams v. State,* 151 Ga. App. 765, 767 (261 SE2d 487) (1979).

(c) In his fourth and fifth enumerations, the appellant contends that the trial court erred when it allowed the state to reopen its case to introduce into evidence appellant's statement to police. We disagree and conclude that the statement was properly admitted.

Appellant argues that since his confession was not offered "in rebuttal," the trial court abused its discretion by allowing the state to reopen and introduce the statement. Appellant's position has consistently been rejected by the courts of this state. "[T]he trial judge is clothed with very broad discretion in the matter of allowing additional evidence at any stage of trial, and that discretion will not be controlled except where there appears to have been an abuse of discretion." *Johnson v. State,* 164 Ga. 47 (137 SE 553) (1927). See also *Gregoroff v. State,* 158 Ga. App. 363 (280 SE2d 373) (1981). Such evidence may be offered either in rebuttal or in corroboration of evidence already introduced by the state. *White v. State,* 100 Ga. 659 (28 SE 423) (1897).

Our courts have been quite liberal in this regard. This court recently held that it was not error to allow the state to reopen its case even after jury deliberations have begun. *State v. Roberts,* 247 Ga. 456 (277 SE2d 644) (1981). We cannot say that the trial court abused its discretion by admitting appellant's statement in the present case. See *Britten v. State,* 221 Ga. 97 (143 SE2d 176) (1965).

3. In his second enumeration of error, appellant asserts as error the trial court's denial of his co-defendant's motion for severance. Having failed to move for severance on his own behalf, appellant cannot now claim the denial of Goins' motion as error. *Way v. State,* 239 Ga. 316 (236 SE2d 655) (1977).

4. Finally, appellant contends that the trial court erred when, after granting a motion for individual voir dire and sequestration of jurors, the court questioned prospective jurors in groups of seven. We cannot agree.

The trial judge has broad discretion in matters concerning the questioning of potential jurors on voir dire. Code Ann. § 59-705; *Whitlock v. State,* 230 Ga. 700, 705 (198 SE2d 865) (1973). Any objection appellant may have had to the procedure employed by the trial judge was waived by his failure to raise it at trial. See *Barton v. State,* 81 Ga. App. 810 (60 SE2d 173) (1950).

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 8, 1982.

*John N. Crudup,* for appellant.
*Jeff C. Wayne, District Attorney, Patrick E. McMahon, Assistant District Attorney, Michael J. Bowers, Attorney General, Janice G. Hildenbrand, Staff Assistant Attorney General,* for appellee.