## 45061. BROOKS v. THE STATE.
(365 SE2d 87)

MARSHALL, Chief Justice.

Darryl Edwin Brooks appeals from his conviction of the malice murder of David Anthony Brown, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon, for which he was sentenced to life imprisonment and two five-

year consecutive terms of imprisonment, respectively.[1] We affirm.

Evidence was adduced at the trial to the following effect. The victim's body was found by police in a ditch near a road. His blood-stained motor vehicle was found nearby. Brooks' hat and a scrap of newspaper with his home telephone number on it were found in the vehicle. Although three .22-caliber bullets were recovered from the victim's body, he had died of a stab wound to the heart. In addition, he had sustained multiple stab wounds, and multiple abrasions and marks were found on his body. Brooks was arrested in his grandmother's trailer, where he lived. Police found him hiding in a closet. A .22-caliber revolver and bullets were recovered in a bedroom of the trailer. In his statement, Brooks contended that he had stabbed the victim in self-defense. Brooks and the victim had worked together, and Brooks had purchased marijuana from the victim on previous occasions. On this occasion, Brooks had disagreed with the victim as to the amount of marijuana purchased, and had demanded his money back. When an argument arose while the men were sitting in the victim's motor vehicle, Brooks shot the victim three times. He then ran from the scene, only to discover that he was going in the wrong direction. Brooks stated that when he returned, the victim jumped from the vehicle and threatened him with a knife. Brooks then hit the victim with a tree limb, took possession of the knife, and stabbed the victim repeatedly. Brooks stated that, during the struggle, he and the vehicle rolled into the ditch where the victim's body was found.

1. The appellant first contends that the state failed to carry its burden of proving that his confession was "made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury," as required by OCGA § 24-3-50. See *Brooks v. State*, 244 Ga. 574, 581-82 (2) (261 SE2d 379) (1979).

Here, the appellant — who had a twelfth-grade education and does not contend that he was under the influence of alcohol or other drugs — admitted that he had understood the *Miranda* rights which were duly read to him at all appropriate times. He signed the waiver-of-rights form, and never exercised his right to remain silent or to confer with legal counsel. A contrary conclusion was not required by the evidence that he was interrogated for approximately three hours, or that, during the questioning, he was confronted with some of the evidence against him, which falls into the category of a mere "truism" or "recounting of the facts," rather than an offer of benefit or threat of injury. See, e.g., *McLeod v. State*, 170 Ga. App. 415, 416 (1) (317

---

[1] The crimes were committed on February 27, 1987. Brooks was convicted and sentenced on June 23, 1987. His notice of appeal was filed on July 23, 1987. The trial transcript was filed in the trial court on September 23, 1987. The record was docketed in this court on October 1, 1987, and submitted on November 13, 1987.

SE2d 253) (1984) and cits. Our review of the trial court's *Jackson-Denno* hearing reveals that the court's factual finding that the appellant's confession was freely and voluntarily made, hence admissible, is clearly authorized by the evidence. See *Page v. State*, 249 Ga. 648 (2a) (292 SE2d 850) (1982) and cits.

2. The appellant's second enumerated error is that potential jurors were seated within two to three feet from Brooks and his counsel during jury selection. It is contended that they overheard discussions between defense counsel and Brooks regarding jury selection, and that this prejudiced jurors who were seated.

"Any objection appellant may have had to the procedure employed by the trial judge was waived by his failure to raise it at trial. [Cit.]" *Page v. State*, supra at 651 (4); *Hudson v. State*, 250 Ga. 479 (3b) (299 SE2d 531) (1983). Moreover, the court gave defense counsel an opportunity to examine unsworn jurors, and agreed to excuse any potential juror who might have been prejudiced by overhearing any conversation between defense counsel and Brooks. Only one juror stated that he had overheard such remarks, and defense counsel stated, after examining him, "I don't believe there is any harm done in the case of this juror, Your Honor." "The trial judge has broad discretion in matters concerning the questioning of potential jurors on voir dire. [Cits.]" *Page v. State*, 249 Ga. 648, supra (4). The error, if any, was harmless. See *Robinson v. State*, 238 Ga. 291 (2) (232 SE2d 561) (1977).

3. The appellant objected at the trial to the introduction in evidence of pre-autopsy photographs of the victim's body taken at the crime scene after the body had been lying in a muddy ditch for approximately 48 hours, and pre-incision photographs taken during the autopsy.

" 'A photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant.' *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983)." *Wilson v. State*, 257 Ga. 444, 447 (8) (359 SE2d 891) (1987). The photographs, "though gruesome, were relevant and material to show the location of the wounds, *Lamb v. State*, 241 Ga. 10 (2) (243 SE2d 59) (1978), and to depict the crime scene, including the location of the victim. *Stewart v. State*, 254 Ga. 233 (3) (326 SE2d 763) (1985)." *Sanders v. State*, 257 Ga. 239, 242 (357 SE2d 66) (1987). Unlike the facts in *Brown*, supra, the body here had not been in the custody of the state long enough to afford an opportunity to make photographs of the crime scene earlier, and the autopsy photographs were taken prior to, rather than after, incision.

Enumerated error 3 is without merit.

4. In enumerated errors 4, 5, and 6, Brooks states that the theory of his defense was that he had withdrawn from a fight with the vic-

tim, only to discover that he was going in the wrong direction, and that, when he returned, the victim assaulted him with a knife and Brooks defended himself. He contends that the homicide constituted either justifiable homicide (self-defense) or, at worst, voluntary manslaughter, and that the trial court's refusal to give several of his requests to charge, which were necessary to present his defense, was error.

The court need not have charged in accordance with the appellant's requests, because the instructions as given presented every aspect of his defense, including the legal effect of withdrawal from the scene. The court charged on voluntary manslaughter, whether or not he was entitled to such a charge on the facts of his case. These enumerated errors are without merit, as the court's charge covered substantially the same principles as the requested charges. *Felker v. State*, 252 Ga. 351, 368 (3) (314 SE2d 621) (1984).

5. Enumerated error 7 contends that Brooks was the only witness to the homicide; that neither the direct nor the circumstantial evidence contradicted his version of the events (i.e., self-defense); and that, accordingly, the verdict should have been voluntary manslaughter at worst. However, applying the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we conclude that the jury's verdict of guilty of murder was supported by the evidence, including the circumstances that, prior to the fatal stabbing, the appellant had argued with and shot the victim.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 25, 1988.

*Berry B. Earle III*, for appellant.

*H. Lamar Cole, District Attorney, James E. Hardy, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General, Leonora Grant,* for appellee.